UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Maxim V. Kuklin, | Case No. 17-cv-5416-JNE-KMM |
| Plaintiff, | |
| v. | **Report and Recommendation** |
| Regents of the University of Minnesota, et al., | |
| Defendants. | |

Plaintiff Maxim Kuklin brings an action against the Regents of the University of Minnesota and several professors from the University's Carlson School of Management (collectively, the "University Defendants") alleging violations of the Due Process clause and the First Amendment, breach of contract, and tortious interference with contract. The University Defendants filed a motion to dismiss for failure to state a claim. For the following reasons, the Court recommends that the University Defendants' motion be granted.

## BACKGROUND

Mr. Kuklin was a student in the University of Minnesota's Carlson School Ph.D. program from 2012 to 2016. (Amend. Compl. ¶¶ 33, 39.) A student in the program must pass written and oral preliminary examinations before progressing to the next level of study. (Amend. Compl. ¶ 35.) Mr. Kuklin passed his written preliminary examinations in the summer of 2014. (Amend. Compl. ¶ 36.) However, Mr. Kuklin did not pass his oral examination, and was terminated from the Ph.D. program in the summer of 2016. (Amend. Compl. ¶ 39.) The circumstances surrounding Mr. Kuklin's unsuccessful oral examination and termination from the program underlie this lawsuit.

In the spring of 2014, Mr. Kuklin wrote a research paper that he hoped to use as the basis for his oral examination. (Amend. Compl. ¶¶ 40–44.) However, after finishing a draft of the paper, Mr. Kuklin was informed that the Ph.D. committee, made up of four individuals who oversee Ph.D.-related issues, had decided that Mr. Kuklin could not use this paper for his oral examination. (Amend. Compl. ¶¶ 53–55.) Another professor told Mr. Kuklin that department policy did not prevent Mr. Kuklin from using the paper, despite the Ph.D. committee's decision. (Amend. Compl. ¶ 56.) Mr. Kuklin alleges that he later learned that it was not the Ph.D. committee, but another group of professors, Defendants Dr. Benner, Dr. Shaver, Dr. Waldfolgel, and Dr. Vaaler, who made the decision that Mr. Kuklin should not use his first paper. (Amend. Compl. ¶ 59.) He alleges that these professors did not have the authority to make such a decision. (*Id.*) Regardless, Mr. Kuklin chose to "avoid conflict" and write a different paper for use at his oral examination. (Amend. Compl. ¶ 57.)

While Mr. Kuklin was working on his second paper, he was also putting together his oral examination committee. Mr. Kuklin chose Defendants Dr. Sapienza, Dr. Zahra, non-party Martin Ganco, who was later replaced by Defendant Dr. Kaul after Dr. Ganco transferred to another university, and Defendant Dr. Ritter, who was later added to the committee. Mr. Kuklin proposed his second paper to this committee in March of 2015. (Amend. Compl. ¶ 73.) Mr. Kuklin alleges that the committee raised concerns about the methodology he used, and advised him to remove portions of this paper that related to this methodology. (Amend. Compl. ¶ 74.) After submitting a draft of the paper to Dr. Sapienza and Dr. Zahra, Mr. Kuklin alleges he was advised not to conduct certain statistical analyses for the limited purposes of the oral examination. (Amend. Compl. ¶ 80.)

After an oral examination, the oral examination committee votes on the student's performance. Each member of the committee may vote "pass," "pass with reservations," or "fail." In the event of a tie, the vote is decided in favor of passing. If a student passes "with reservations," they are provided with a list of "items to attend," and given an opportunity to revise their paper before making a second

attempt at the oral examination. When Mr. Kuklin took his oral examination, his committee had concerns regarding certain study design choices, which Mr. Kuklin alleges could not be answered without discussing the same methodology he was previously advised to remove from his paper. (Amend Compl. 81.) He further alleges that the committee was concerned about the "robustness" of his paper's statistical results, which Mr. Kuklin alleges could not be addressed without using the statistical analyses that he was advised not to include in his paper. (Amend. Compl. ¶ 81.) After Mr. Kuklin's oral examination, his committee unanimously voted "pass with reservations." (Amend. Compl. ¶ 81.)

Mr. Kuklin alleges that during the revision process, he received conflicting feedback regarding his work. (Amend. Compl. ¶¶ 83–88.) Nevertheless, Mr. Kuklin made his second presentation, and the committee members voted on his performance. This vote resulted in a tie—two passed Mr. Kuklin with reservations, and two failed him outright. (Amend. Compl. ¶ 92.) However, when a second oral examination follows a previous "with reservations" vote, only "pass" or "fail" votes are permitted, a fact the committee became aware of after the second vote. (Amend. Compl. ¶ 93.) A third vote was taken on the same day, shortly after the second vote, which resulted in an unanimous "fail" decision. (Amend. Compl. ¶ 94.)

Mr. Kuklin filed a student academic complaint, alleging the violation of several university policies in the handling of his oral examinations. (Amend. Compl. ¶ 117.) The academic complaint officer held that the allegations did not fall within the scope of issues covered by the University's academic complaint procedure. (Amend. Compl. ¶ 118.) Mr. Kuklin appealed this decision to the University Provost, who upheld the majority of the academic complaint officer's decision. However, the Provost concluded that Mr. Kuklin's committee had violated university policy when it had voted for a third time, and ordered a hearing. (Amend. Compl. ¶¶ 119–120.)

In November of 2016, the University held a hearing regarding Mr. Kuklin's oral examination attempts. (Amend. Compl. ¶ 124.) The hearing panel recommended that the members of Mr. Kuklin's oral examination committee vote on whether he

3

would be permitted to retake his oral preliminary examination. (Amend. Compl. ¶ 124.) The committee voted unanimously not to allow Mr. Kuklin to retake the examination. (Amend. Compl. ¶ 125.)

Mr. Kuklin has now filed suit against several professors, the University Board of Regents both as a whole and in their individual capacities, and the academic Provost and Vice Provost, alleging several Due Process and First Amendment Violations, breach of contract, and tortious interference with contract. Mr. Kuklin has also filed a motion for a Preliminary Injunction, seeking to be reinstated to the Ph.D. program with a full financial aid package. The University has filed a motion to dismiss Mr. Kuklin's entire complaint for failure to state a claim. For the foregoing reasons, the University's motion should be granted in its entirety, and Mr. Kuklin's motion for Preliminary Injunction denied as moot.

## ANALYSIS

"[A] complaint must contain sufficient factual allegations to '[s]tate a claim to relief that is plausible on its face'" in order to withstand a motion to dismiss under Rule 12(b)(6). *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). While "detailed factual allegations" are not required, the facts contained within a complaint must be specific enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

Complaints written by pro se plaintiffs are held to "less stringent standards" than pleadings written by attorneys. *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). "[I]f the essence of an allegation is discernible…then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the

proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, a pro se complaint must still allege sufficient facts to state a viable claim. *Id.* at 914. "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

Against this legal backdrop, an examination of Mr. Kuklin's Complaint reveals that it fails to plead a viable legal claim. Not only do the doctrines of qualified immunity and sovereign immunity preclude much of the relief that Mr. Kuklin seeks, but the complaint also does not contain adequate specific allegations to sustain claims that are not covered by these immunities.

### A. Count I: Due Process Claims as to Professors

Mr. Kuklin first claims that by violating University policies, the professors on his oral examination committee and the individuals tasked with reviewing his academic complaint have deprived Mr. Kuklin of procedural and substantive due process rights associated with his pursuit of a Ph.D. However, for at least two reasons, the Court recommends dismissal of these claims.

#### 1. Qualified Immunity

The University argues that the actions of the Faculty Defendants are protected by the doctrine of qualified immunity. This Court agrees. Qualified immunity applies to individual state actors in all but the most egregious of circumstances. A state actor is only prevented from utilizing qualified immunity as a shield against liability if two factors are met: 1) the state official deprived the plaintiff of a constitutional or statutory right, and 2) the right was clearly established at the time of the deprivation, such that "a reasonable official would have understood that his conduct was unlawful under the circumstances." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

As a threshold matter, the Court finds that there is no clearly established right to due process in the context of an academic dismissal. Courts that have examined

5

this question in the past have often assumed that a protected property interest exists in enrollment in or grades from a university for the purpose of their analysis, before finding that relief is not warranted for another reason. But no case has specifically held that a person has a protected property interest in remaining in an academic program. *See, e.g.*, *Regents of University of Mich. v. Ewing*, 474 U.S. 214, 222 (1985); *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91–92 (1978); *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 253 (8th Cir. 1985). A right that has not been adopted cannot be said to be "clearly established." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate."); *Young v. Mercer County Commission*, 849 F.3d 728, 735–36 (8th Cir. 2017). Count I fails for this reason alone. *Id.* at 735 ("Courts may grant qualified immunity on the ground that a purported right was not clearly established by prior case law, without resolving the more difficult question whether the purported right exists at all." (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012))). Here, because the existence of a protected right to remain in a Ph.D. program is not clearly established, the Faculty Defendants have qualified immunity as to Mr. Kuklin's procedural due process claim.

## 2. Failure to State a Procedural Due Process Claim

Even if Mr. Kuklin has a property or liberty interest in continuing his education, the facts he alleges in his First Amended Complaint demonstrate that he received due process during his dismissal, so he fails to sufficiently allege that his rights were infringed.

In the context of an ordinary academic dismissal, only careful and deliberate decision-making is required under the Due Process Clause of the Fourteenth Amendment. *Horowitz*, 435 at 85; *see also Monroe v. Ark. State Univ.*, 495 F.3d 591, 595 (8th Cir. 2007). Although there is no requirement that a hearing be held, a student must be given "prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal." *Schuler v. Univ. of Minn.*, 788 F.2d 510, 514 (8th Cir. 1986). The procedure followed by the Defendants, as described by Mr. Kuklin in his complaint, comports with these requirements. Mr. Kuklin received notice of the

6

faculty's dissatisfaction with his work after he received a "pass with reservations" on his first oral examination. Mr. Kuklin understood the possibility of dismissal if he did not pass the oral examination a second time. (Amend. Compl. ¶ 77.) And although he disagrees with its outcome, Mr. Kuklin has not alleged that the decision-making process was anything but careful and deliberate.

In support of his argument that more due process was required in his case, Mr. Kuklin relies on *Greenhill v. Bailey*, an Eighth Circuit case that predates *Horowitz* and its progeny. 519 F.2d 5 (8th Cir. 1975). In *Greenhill*, the plaintiff was dismissed from medical school for poor academic performance, and the medical school informed the Association of American Medical Colleges that the plaintiff "lacked intellectual ability." *Id.* at 7–8. The *Greenhill* court held that the plaintiff was entitled to an informal hearing prior to his academic dismissal, due to the additional action that the university had taken in disseminating information that went "beyond a factual statement that Greenhill had failed his junior year…and suggest[ed] that Greenhill [was] intellectually unfit to undertake the study of medicine at all." *Id.* at 8. The court reasoned that in light of the stigma imposed by the university's sweeping actions, Greenhill's academic dismissal should have been treated more like a disciplinary dismissal, which requires a hearing. *Id.* The *Greenhill* court cautioned, however, that most academic dismissals do not require this process, and that it should be reserved for only particular circumstances. *Id.* at 8–9.

*Greenhill* does not control the current litigation. First, it precedes *Horowitz*, and to the extent it could be read to support a broader due process requirement than that adopted by the Supreme Court for academic dismissal it is no longer viable. More importantly, the factual circumstances of *Greenhill* are distinct from those alleged by Mr. Kuklin. Although he alleges in his motion papers that he has been unable to obtain enrollment in another Ph.D. program, Mr. Kuklin only speculates that this is due to his termination from the University of Minnesota. (Pl.'s Mot. Prelim. Inj. at 2.) Mr. Kuklin does not allege any action on behalf of the Defendants that rises to the level of broad dissemination of irrefutably stigmatizing information as seen in

7

*Greenhill*. *Horowitz* makes clear that simple termination from an academic program is not enough. As such, Mr. Kuklin was not entitled to a hearing as part of his academic dismissal process, and his procedural due process claim must fail.[1]

### 3. Failure to Allege a Substantive Due Process Claim

It is an open question whether a substantive due process cause of action exists for a student who has been dismissed for academic reasons. *See Monroe v. Arkansas State University*, 495 F.3d 591, 594–95 (8th Cir. 2007) (assuming, "without deciding," that the plaintiff had a protected interest cognizable under substantive due process); *Schuler v. University of Minnesota*, 788 F.2d 510, 515 (8th Cir. 1986) ("*Horowitz* left open the question of whether a student subject to academic dismissal may maintain a cause of action for the violation of his or her right to substantive due process."). Even assuming the existence of such a right, however, Mr. Kuklin has not alleged its violation.

A plaintiff must allege that a state has infringed on a "fundamental liberty interest[]" in order to state a violation of the right to substantive due process. *Riley v. St. Louis Cty.*, 153 F.3d 627, 631 (8th Cir. 1998) (internal quotation marks omitted). A right is fundamental if it is enumerated in the Constitution or if it is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *See, e.g.*, *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007). A plaintiff may also state a substantive due process claim by asserting that "the government's actions either shock the conscience or offend judicial notions of fairness or human dignity." *Young v. City of St. Charles*, 244 F.3d 623, 628 (8th Cir. 2001) (internal quotation marks and citations omitted). In the academic context, a governmental action is a violation of substantive due process if the action was arbitrary and capricious. *Schuler*, 788 F.2d at 515; *Greenhill v. Bailey*, 519 F.2d 5, 10 n.12 (8th Cir. 1975). Only where state action

---

[1] Even if Mr. Kuklin were entitled to a hearing, his complaint reveals that he received one as to at least some of his complaints. (Amend Compl. ¶ 124.)

8

"is not supportable on any rational basis" is this arbitrary and capricious standard met. *Id.* (quoting *First National Bank v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974)).

First, Mr. Kuklin cannot demonstrate that his ability to pursue a doctorate degree at the institution of his choosing is a fundamental liberty interest. As discussed above, it is unclear if a substantive due process action even exists for students dismissed from graduate programs for academic reasons. *See Monroe*, 495 F.3d at 594–95. Such a right, if it does exist, is not so "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty" so as to trigger a substantive due process claim on its face. *See Flowers*, 478 F.3d at 873. Nor is such a right enumerated in the Constitution. Second, Mr. Kuklin's First Amended Complaint fails to allege such egregious governmental conduct as to trigger substantive due process concerns. Mr. Kuklin's specific substantive due process claims are somewhat unclear from the face of the complaint, but certainly fail to include any specific action that the Defendants have taken as arbitrary or capricious. Specifically, Mr. Kuklin does not allege that any conduct of Defendants was "such a substantial departure from accepted academic norms as to demonstrate that the faculty did not exercise professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985). On the contrary, Mr. Kuklin has pleaded that he was in regular discussion with his professors regarding his academic work, that his professors provided academic and field-relevant feedback and a chance to fix problems with his work, and that ultimately his professors decided that Mr. Kuklin's work did not meet the academic standards of the university. These actions all demonstrate that professional judgment was exercised throughout Mr. Kuklin's oral examination process, albeit with an outcome that he rejects. To the extent that Mr. Kuklin had a substantive due process right to particular academic treatment, he has not adequately pleaded that it was violated. As such, Count I should be dismissed for failure to state a claim.

### B. Count II: First Amendment Retaliation as to Professors

Mr. Kuklin alleges that his professors evaluated his papers and oral examination in a biased manner contrary to University Policies. He alleges that his professors'

actions were so biased so as to have violated his First Amendment rights. Mr. Kuklin's First Amendment claims must fail, however, because the professors are protected by qualified immunity. Independent of qualified immunity, Mr. Kuklin has also failed to state a claim upon which relief can be granted.

### 1. Qualified Immunity

The claims raised by Mr. Kuklin in Count Two must be dismissed under the doctrine of qualified immunity. Mr. Kuklin cannot demonstrate that he had a clearly established First Amendment right in presenting his academic research papers as he wished. As such, he cannot show that his professors deprived him of that constitutional right. *See Kahle* 477 F.3d at 550 (8th Cir. 2007).

It is unclear if the papers Mr. Kuklin wrote in connection with his oral preliminary examination constitute protected speech for the purposes of the First Amendment. Like in due process claims, courts give great deference to universities in First Amendment challenges that involve academic standards and curriculum. "Although a university's interest in academic freedom does not immunize the university altogether from First Amendment challenges, courts have concluded that a university has discretion to engage in its own expressive activity of prescribing its curriculum and that it is appropriate to defer to the university's expertise in defining academic standards and teaching students to meet them." *Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 522 (Minn. 2012) (quoting *Brown v. Li*, 308 F.3d 939, 950, 952 (9th Cir. 2002)) (internal quotation marks omitted). Furthermore, this Court is unaware of any case in which a court has held that grading or otherwise evaluating a student's work for academic purposes constituted a First Amendment violation. Mr. Kuklin simply cannot establish that the professors violated a "clearly established right" so as to overcome qualified immunity as to his retaliation claim. *Young*, 849 F.3d at 735.

### 2. Failure to State a Claim for First Amendment Retaliation

Even if qualified immunity did not apply, Count II fails for the independent reason that Mr. Kuklin has not sufficiently stated a claim upon which relief may be

granted.  Under 42 U.S.C. § 1983, a First Amendment retaliation claim is established when a plaintiff shows "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).  As discussed *supra*, it is unclear whether Mr. Kuklin's authorship of academic papers constitutes a protected activity.  But even if Mr. Kuklin's papers are protected speech, however, he has failed to adequately plead that the adverse action taken against him would chill a person of ordinary firmness.

Not all adverse actions taken against an individual exercising First Amendment rights are actionable under §1983; only conduct that would deter a person of ordinary firmness from further exercising those rights is sufficient to support a claim of First Amendment retaliation. *See Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002).  Here, the adverse actions alleged include his professors giving negative feedback on Mr. Kuklin's first paper(Compl. ¶¶ 43–49), giving negative feedback on his second paper (*id.* ¶ 81–83), and ultimately assigning a failing grade on his oral examination (*id.* ¶ 94), which led to Mr. Kuklin's termination from the graduate school. (*Id.* ¶ 116.)  Receiving a failing grade is certainly stressful and perhaps even embarrassing or humiliating, but this distress is insufficient to deter people of ordinary firmness from writing research papers to be graded at a university.  *See Naucke*, 284 F.3d at 928 ("[I]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.") (quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).  Although Mr. Kuklin does include the actual phrase "Defendants' actions were sufficiently serious to deter a person of ordinary firmness from engaging in protected speech and conduct" within his Amended Complaint (¶ 138), this is merely a conclusory statement.  Without factual support, Mr. Kuklin's legal conclusion is not enough to state a claim for First Amendment retaliation.  *See Iqbal*, 556 U.S. at 679.

Because the professors are protected by the doctrine of qualified immunity, and because Mr. Kuklin has failed to state a claim upon which relief can be granted, Count II should be dismissed.

### C. Count III: First Amendment Retaliation and Due Process Violations as to Individual Regents

Mr. Kuklin next alleges First Amendment Retaliation and Due Process claims against the Individual Regents of the University of Minnesota. These claims must be dismissed under Eleventh Amendment Immunity and because Mr. Kuklin fails to state a claim for injunctive relief as to any individual regent.

#### 1. Eleventh Amendment Immunity

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." It has long been understood that the Eleventh Amendment bars actions in federal court against a state by its own citizens as well. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). "The Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially for the recovery of money from the state." *Raymond v. Bd. of Regents of Univ. of Minn.*, 140 F. Supp. 3d 807, 813–14 (D. Minn. 2015) (citing *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996)) (quotation omitted). State officials acting in their official capacities are not "persons" under § 1983. *E.g.*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Nix v. Norman*, 879 F.2d 429, 432–33 (8th Cir. 1989).

Immunity provided by the Eleventh Amendment, also referred to as sovereign immunity, prohibits Mr. Kuklin from seeking damages against the Individual Regents in their official capacities. *Id.*; *see also Raymond*, 140 F. Supp. 3d at 814. Therefore, to the extent that Count III seeks damages, it should be dismissed based on the doctrine of sovereign immunity.

### 2. Failure to State a Claim

Although the doctrine of sovereign immunity does not protect the Individual Regents from a suit seeking injunctive relief from them in their official capacities, this aspect of Count III must also fail because the First Amended Complaint contains and insufficient factual basis upon which relief could be granted. Specifically, it sets forth no factual allegations regarding actions taken by any Individual Regent. In order to state a viable claim, the complaint "must contain sufficient factual matter" to allow the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Here, there is no factual allegation at all as to any action taken by any Regents from which the court could draw such an inference. As such, Mr. Kuklin's claim against the Individual Regents in their official capacities fails in its entirety—the claim for damages is prohibited by the doctrine of sovereign immunity, and the claim for injunctive relief falls because Mr. Kuklin has failed to state a claim.

Similarly, Mr. Kuklin has failed to state a claim for personal liability against the Individual Regents under § 1983. To state such a claim, "the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). As discussed above, Mr. Kuklin has not described any action taken by any Individual Regent. Mr. Kuklin's allegations that the Individual Regents maintain policies that "exhibit[] deliberate indifference to the constitutional rights of graduate students," and fail to adequately supervise and train University employees have no factual support. These conclusory statements are not enough to state a claim for personal liability under § 1983. *See Iqbal*, 556 U.S. at 679. As such, the entirety of Count III should be dismissed.

### D.   Count IV: Breach of Contract as to The Board of Regents

Count IV, Breach of Contract against the Board of Regents of the University of Minnesota as a whole must also be dismissed due to Eleventh Amendment Immunity. The Board of Regents is the governing body of the University, and is

13

immune to suit to the same extent as the University itself.  *See Humenansky v. Regents of Univ. Minn.*, 152 F.3d 822, 823 (8th Cir. 1998);  *Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, 683 N.W.2d 274, 280 (Minn. 2004).  As an instrumentality of the state, the University is protected from suit in federal court by the Eleventh Amendment, unless the state has consented to be sued or Congress has expressly abrogated the state's immunity.  *E.g.*, *Raymond v. Bd. of Regents of Univ. of Minn.*, 140 F. Supp. 3d 807, 813 (D. Minn. 2015).

The Board of Regents has not consented to this lawsuit, nor has Mr. Kuklin alleged otherwise.  Further, the Board of Regents has not consented to lawsuits in federal court regarding breach of contract claims as a whole, and Congress has not expressly abrogated the state's immunity in such cases.  *See Patil v. Minn. State. Univ., Manktao*, No. 12-1052-JRT-JSM, 2012 WL 7807608 at *16 (D. Minn. Dec. 10, 2012) (holding that a common law breach of contract action was barred by sovereign immunity).  The Board of Regents of the University of Minnesota is protected from suit by the doctrine of sovereign immunity, and therefore Count IV must be dismissed.

### E. Count V: Tortious Interference With Contract as to Professors Benner, Shaver, Vaaler, and Waldfogel.

To state a claim for tortious interference with contract, Mr. Kuklin must allege five separate elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages."  *CPI Card Group, Inc. v. Dwyer*, 294 F. Supp. 3d 791, 816 (D. Minn. 2018) (quoting *E-Shops Corp. v. U.S. Bank Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012)).  Mr. Kuklin alleges that Professors Benner, Shaver, Vaaler, and Waldfogel tortiously interfered with a contract between Mr. Kuklin and the University when they decided that Mr. Kuklin could not use his first paper for the oral preliminary examination.  (Amend. Compl. ¶ 153.)

The University contends that Mr. Kuklin has not pleaded the existence of a contract.  The Court need not reach this question, however, because, for the purposes

14

of a tortious interference claim, "a party cannot interfere with its own contract," and even if a contract existed between Mr. Kuklin and the University, his professors could not have tortiously interfered with it.  *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 505 (Minn. 1991); *see also Cenveo Corp. v. Southern Graphic Sys., Inc.*, 784 F. Supp,. 2d 1130 1139 (D. Minn. 2011).  When an employee or other agent of the party to a contract causes a breach of that contract, the "dispute is with the company employer for breach of contract, not the agent individually for a tort."  *Nordling*, 478 N.W.2d at 505.  Tortious interference with a contract by an agent may only occur if the agent was acting outside of the scope of his or her duties.  *Id.* at 506.

Mr. Kuklin has failed to adequately plead that the individual defendants in Count V acted outside of the scope of their duties when they allegedly decided not to permit Mr. Kuklin to use his first paper.  The only allegation made to this is the plain legal conclusion that "Defendants acted outside of the scope of their duties as University employees." (Amend. Compl. ¶ 154.)  But "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Without factual support, this conclusory statement is not enough to state a claim for tortious interference with a contract by Mr. Kuklin's professors.  *Id.* at 679.  And indeed it appears that the conduct at issue—making decisions about academic matters—is plainly within the defendants' employment as professors.  Because Mr. Kuklin has failed to plead that his professors were acting outside of their scope of employment, and because employees acting within the scope of their duties cannot tortuously interfere with their employer's contracts, Count V must be dismissed.

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. The University Defendants' Motion to Dismiss (ECF No. 43) be **GRANTED**.

2. Mr. Kuklin's Motion for Preliminary Injunction (ECF No. 26) be **DENIED AS MOOT**.

Date: July 9, 2018 	/s/ *Katherine Menendez*
	Katherine Menendez
	United States Magistrate Judge